PACIFIC TRIAL ATTORNEYS
A Professional Corporation
Scott J. Ferrell, Bar No. 202091
sferrell@pacifictrialattorneys.com
4100 Newport Place Drive, Ste. 800
Newport Beach, CA  92660
Tel: (949) 706-6464
Fax: (949) 706-6469

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LUIS LICEA, an individual, and BRITTNEY MEJICO, an individual<br><br>Plaintiffs,<br><br>v.<br><br>TREASURY WINE ESTATES AMERICAS COMPANY, a Delaware corporation; and DOES 1-10, inclusive,<br><br>Defendant. | Case No.  5:19-cv-02121<br><br>**COMPLAINT** |

Plaintiffs Luis Licea and Brittney Mejico ("Plaintiffs"), allege the following upon information and belief based upon investigation of counsel, except as to their own acts, which they allege upon personal knowledge:

## INTRODUCTION

1. As recently recognized by the Supreme Court of the United States, "The Internet's prevalence and power have changed the dynamics of the national economy." *South Dakota v. Wayfair, Inc.*, 138 S. Ct. 2080, 2097 (2018) (noting that in 1992, less than 2 percent of Americans had Internet access whereas today that number is about 89 percent). According to 2018 polling data, 89 percent of American adults use the Internet.[1] Indeed, one federal district court has noted that "few areas are more integral to 'the economic and social mainstream of American life,' than the Internet's websites." *Del-Orden v. Bonobos, Inc.*, No. 17 Civ. 2744 (PAE), 2017 WL 6547902, at *9 (S.D.N.Y. Dec. 20. 2017); *United States v. Peterson*, 248 F.3d 79, 83 (2d Cir. 2001) ("Computers and Internet access have become virtually indispensable in the modern world of communications and information gathering.").

2. According to recent U.S. Census data, approximately 8 million Americans describe themselves as disabled because they are visually-impaired.[2] Thus, depriving blind persons of equal access to commercial websites on the internet would allow American businesses to treat blind persons as second-class citizens who can be segregated from the rest of American society, which is antithetical to the very purpose that motivated Congress to enact the Americans with Disabilities Act of 1990, 42 U.S.C. § 12181 *et seq.* ("ADA"), almost three decades ago, as well as the enactment of

---

[1] http://www.pewinternet.org/fact-sheet/internet-broadband/ (last visited July 30, 2018). Indeed, 98 percent of adults between the ages of 18-29 use the Internet, and 97 percent of adults between the ages of 30-49 use the Internet. *Id.*

[2] In 2016, an estimated 7.7 million Americans reported having a visual disability. http://www.disabilitystatistics.org/reports/acs.cfm?statistic=1 (last visited July 30, 2018). The statistics were calculated by the Cornell University Yang Tan Institute using the U.S. Census Bureau's 2016 American Community Survey (ACS) Public Use Microdata Sample (PUMS) data. The estimate is based on a sample of 3,085,278 persons who participated in the 2016 ACS.

California's Unruh Civil Rights Act. "'Congress found that 'historically, society has tended to isolate and segregate individuals with disabilities, and, despite some improvements, such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem.' ' " *Del-Orden*, 2017 WL 6547902, at *9 (quoting *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 674-75, 121 S. Ct. 1879 (2001) (quoting 42 U.S.C. § 12101(a)(2))). "Congress found that 'physical or mental disabilities in no way diminish a person's right to fully participate in *all aspects of society*, yet many people with physical or mental disabilities have been precluded from doing so because of discrimination.'" *Del-Orden*, 2017 WL 6547902, at *9 (quoting 42 U.S.C. § 12101(a)(1)) (emphasis added in *Del-Orden*). "After thoroughly investigating the problem, Congress concluded that there was a 'compelling need' for a 'clear and comprehensive national mandate' to eliminate discrimination against disabled individuals, and to integrate them 'into the economic and social mainstream of American life.'" *PGA Tour*, 532 U.S. at 675 (quoting S. Rep. No. 101-116, p. 20 (1989); H.R. Rep. No. 101-485, pt. 2, p. 50 (1990), U.S.C.C.A.N. 1990, pt. 2, pp. 303, 332). To remedy these ills, "Congress provided [a] broad mandate" in the ADA to effect the statute's "sweeping purpose." *Id.* "In a society in which business is increasingly conducted online, excluding businesses that sell services through the Internet from the ADA would[:] 'run afoul of the purposes of the ADA and would severely frustrate Congress's intent that individuals with disabilities fully enjoy the goods, services, privileges, and advantages ***available indiscriminately to other members of the general public***'". *National Ass'n of the Deaf v. Netflix, Inc.*, 869 F. Supp. 2d 196, 200 (D. Mass. 2012) (emphasis added) (quoting *Carparts Distrib. Ctr. v. Auto Wholesaler's Ass'n*, 37 F.3d 12, 20 (1st Cir. 1994)).

3.     Section 51(f) of the California Civil Code provides that a violation of the right of any individual under the ADA, shall also constitute a violation of the Unruh Civil Rights Act. A person who visits a business's website with intent to use its services and encounters terms or conditions that exclude the person from full and equal

access to its services has standing under the Unruh Act, with no further requirement that the person enter into an agreement or transaction with the business. *White v. Square, Inc.,* 7 Cal.5th 1019, 2019 WL 3771912, at *7 (Cal. Sup. Ct. Aug. 12, 2019).

4.  Plaintiffs are blind individuals who require screen reading software to read website content and access the internet. Defendant Treasury Wine Estates Americas Company ("Defendant") maintain its websites, chateaustjean.com (the "Chateau St. Jean Website"), etudewines.com (the "Etude Wines Website"), and stagsleap.com (the "Stag's Leap Website") (collectively, the "Websites"), in such a way that they contain numerous access barriers preventing Plaintiffs, and other blind and visually-impaired individuals, from gaining equal access to the Websites. Defendant's denial of full and equal access to its Websites, and therefore its products and services offered thereby, are a violation of Plaintiffs' rights under the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12181 *et seq.*, and under the California Unruh Civil Rights Act, California Civil Code § 51 *et seq.* ("Unruh Civil Rights Act").

## JURISDICTION AND VENUE

5.  This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 12188, for Plaintiff's claims arising under the ADA.

6.  This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Plaintiff's pendent claims under the Unruh Civil Rights Act.

7.  The Court has personal jurisdiction over Defendant's principal place of business located in California; because its products are advertised, marketed, distributed and sold through the State of California; Defendant engaged in the wrongdoing alleged in this Complaint throughout the United States, including in the State of California; Defendant is authorized to do business in the State of California; and Defendant has sufficient minimum contacts with the State of California, rendering the exercise of jurisdiction by the Court permissible under traditional notions of fair play and substantial justice. Moreover, Defendant is engaged in substantial activity with the State of California.

8. Venue is proper in this jurisdiction pursuant to 28 U.S.C. § 1391 because Plaintiffs reside in this District, Defendant is subject to personal jurisdiction in this District, and a substantial portion of the conduct complained of herein occurred in this District.

## PARTIES

9. Plaintiff Luis Licea resides in San Bernardino County, California, in the Central District of California. Plaintiff Licea is permanently blind and uses screen readers in order to access the internet and read website content. Despite several attempts to use and navigate the Websites, Plaintiff Licea has been denied the full use and enjoyment of the facilities and services of the Websites as a result of accessibility barriers on the Websites. The access barriers on the Websites have caused a denial of Plaintiff Licea's full and equal access multiple times in the past, and have deterred Plaintiff Licea on a regular basis from accessing Defendant's Websites. Similarly, the access barriers on the Websites have deterred Plaintiff Licea from visiting Defendant's retail winery locations in California.

10. Plaintiff Brittney Mejico resides in Riverside County, California, in the Central District of California. Plaintiff Mejico is permanently blind and uses screen readers in order to access the internet and read website content. Despite several attempts to use and navigate the Chateau St. Jean Website, Plaintiff Mejico has been denied the full use and enjoyment of the facilities and services of the Chateau St. Jean Website as a result of accessibility barriers on the Chateau St. Jean Website. The access barriers on the Chateau St. Jean Website have caused a denial of Plaintiff Mejico's full and equal access multiple times in the past, and have deterred Plaintiff Mejico on a regular basis from accessing Defendant's Chateau St. Jean Website. Similarly, the access barriers on the Chateau St. Jean Website have deterred Plaintiff Mejico from visiting Defendant's Chateau St. Jean retail winery locations in California.

11. While Plaintiffs genuinely want to avail themselves of Defendant's goods and services as offered on Defendant's Websites, Plaintiffs have a dual motivation: they

are also "testers," which one federal court has defined to be "individuals with disabilities who visit places of public accommodation to determine their compliance with Title III [of the ADA]." *Harty v. Burlington Coat Factory of Penn., L.L.C.*, Civil Action No. 11-01923, 2011 WL 2415169, at *1 n.5 (E.D. Pa. June 16, 2011). Indeed, it is widely accepted that "testers" such as Plaintiffs advance important public interests and should be "praised rather than vilified." *Murray v. GMAC Mortgage Corp.*, 434 F.3d 948, 954 (7th Cir. 2006). Plaintiffs have filed multiple lawsuits against various operators of commercial websites under the Unruh Civil Rights Act as part of their advocacy work on behalf of the civil rights of visually-impaired persons. Plaintiffs intend to continue to engage in such advocacy work into the foreseeable future to ensure that Defendant's commercial Websites and others are fully and equally enjoyable to and usable by visually-impaired persons, including themselves.

12. Plaintiffs are informed and believe, and thereon allege, that Defendant Treasury Wine Estates Americas Company is a Delaware corporation with its principal place of business located in Napa, California. Plaintiff is informed and believes, and thereon alleges, that Defendant owns and operates retail winery locations in California. These locations constitute places of public accommodation. Defendant's locations provide to the public important goods and/or services. Defendant also provides to the public the Websites. The Websites provide access to Defendant's array of services, including a location locator for its locations, descriptions of its products, amenities and services, and many other benefits related to these facilities and services. Defendant's locations are public accommodations within the definition of Title III of the Americans With Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12181(7) and likewise are "business establishments" within the meaning of the California Civil Code § 51 et seq. The Websites are a service, privilege, and advantage and accommodation of Defendant's services and locations. The Websites are a service, privilege, advantage, and accommodation that are heavily integrated with these locations.

13. The true names and capacities of the Defendants sued herein as DOES 1 through 10, inclusive, are currently unknown to Plaintiff, who therefore sues such Defendants by fictitious names. Each of the Defendants designated herein as a DOE is legally responsible for the unlawful acts alleged herein. Plaintiff will seek leave of Court to amend this Complaint to reflect the true names and capacities of the DOE Defendants when such identities become known.

## **FACTS**

14. The Internet has become a significant source of information, a portal and tool for conducting business, and a means for doing everyday activities such as shopping, banking, etc. for both the sighted and blind, and/or visually-impaired persons.

15. Blind individuals may access websites by using keyboards in conjunction with screen-reading software that vocalizes visual information on a computer screen. Screen access software provides the only method by which a blind person may independently access the internet. Unless websites are designed to be read by screen reading software, blind persons are unable to fully access websites and the information, products and services, privileges, advantages, and accommodations contained thereon.

16. The international website standards organization, W3C, has published version 2.0 of the Web Content Accessibility Guidelines ("WCAG 2.0"). WCAG 2.0 are well-established, industry standard guidelines for ensuring websites are accessible to blind and visually-impaired people. These guidelines are successfully followed by numerous large business entities to ensure their websites are accessible. These guidelines recommend several basic components for making websites accessible including, but not limited to, adding invisible alternative text to graphics, ensuring that all functions can be performed using a keyboard and not just a mouse; ensuring that image maps are accessible, and adding headings so that blind people can easily navigate websites. Without these very basic components, a website will be inaccessible to a blind or visually-impaired person using a screen reader.

- 6 -
COMPLAINT

17. Defendant offers the Websites, which provide, as set forth above, a breadth of information concerning its products and other amenities and services, privileges, advantages, and accommodations, and allows users to find the retail winery locations to visit.

18. Due to Defendant's failure to remove access barriers on the Websites, Plaintiffs and other blind and visually impaired individuals have been denied equal enjoyment of and access to the retail winery locations and to Defendant's other services, advantages, privileges, and accommodations offered to the public through the Websites.

19. Defendant has denied blind individuals equal enjoyment of and access to the products, services, privileges, advantages, and accommodations and information made available through the Websites by preventing them from freely navigating the Websites. The Websites contain access barriers that prevent free and full use by Plaintiff and other blind persons using screen reading software.

20. The Chateau St. Jean Website's barriers include, but are not limited to, the following: (1) Linked image missing alternative text which presents a problem because an image without alternative text results in an empty link. Alternative Text is invisible code embedded beneath a graphical image on a website. Web accessibility requires that Alternative Text be coded with each picture so that a screen reader can speak the Alternative Text where a sighted user sees pictures. Alternative Text does not change the visual presentation, but instead generates a text box that will pop-up when the mouse moves over the picture. The lack of Alternative Text on these graphics prevents screen readers from accurately vocalizing a description of the graphics. As a result, visually-impaired Chateau St. Jean customers are unable to determine what is on the website, browse the site, and determine whether or not to visit Defendant's winery location and/or purchase Defendant's products; (2) Empty headings, which present no information and may introduce confusion; (3) Empty links that contain no text causing the function or purpose of the link to not be presented to the user. This can introduce confusion for keyboard and screen reader users; and (4) Redundant Links where

adjacent links go to the same URL address which results in additional navigation and repetition for keyboard and screen reader users.

21. The Etude Wines Website's barriers include, but are not limited to, the following: (1) Linked image missing alternative text which presents a problem because an image without alternative text results in an empty link. Alternative Text is invisible code embedded beneath a graphical image on a website. Web accessibility requires that Alternative Text be coded with each picture so that a screen reader can speak the Alternative Text where a sighted user sees pictures. Alternative Text does not change the visual presentation, but instead generates a text box that will pop-up when the mouse moves over the picture. The lack of Alternative Text on these graphics prevents screen readers from accurately vocalizing a description of the graphics. As a result, visually-impaired Etude Wines customers are unable to determine what is on the website, browse the site, and determine whether or not to visit Defendant's winery location and/or purchase Defendant's products; (2) Empty headings, which present no information and may introduce confusion; (3) Empty links that contain no text causing the function or purpose of the link to not be presented to the user. This can introduce confusion for keyboard and screen reader users; and (4) Redundant Links where adjacent links go to the same URL address which results in additional navigation and repetition for keyboard and screen reader users.

22. The Stag Leap's Website's barriers include, but are not limited to, the following: (1) Linked image missing alternative text which presents a problem because an image without alternative text results in an empty link. Alternative Text is invisible code embedded beneath a graphical image on a website. Web accessibility requires that Alternative Text be coded with each picture so that a screen reader can speak the Alternative Text where a sighted user sees pictures. Alternative Text does not change the visual presentation, but instead generates a text box that will pop-up when the mouse moves over the picture. The lack of Alternative Text on these graphics prevents screen readers from accurately vocalizing a description of the graphics. As a result,

visually-impaired Stag's Leap customers are unable to determine what is on the website, browse the site, and determine whether or not to visit Defendant's winery location and/or purchase Defendant's products; (2) Empty headings, which present no information and may introduce confusion; (3) Empty links that contain no text causing the function or purpose of the link to not be presented to the user. This can introduce confusion for keyboard and screen reader users; and (4) Redundant Links where adjacent links go to the same URL address which results in additional navigation and repetition for keyboard and screen reader users.

23. Due to the inaccessibility of the Websites, blind and otherwise visually impaired customers who use screen readers have been hindered from effectively browsing for Defendant's products, amenities and services, privileges, advantages, and accommodations that exist online unlike sighted users. If the Websites were accessible, Plaintiffs would independently and privately investigate Defendant's products, services, privileges, advantages, accommodations, and amenities, and find Defendant's locations, as sighted individuals can and do.

24. Despite several attempts to access the Websites in recent months, the numerous access barriers contained on the Websites have denied Plaintiffs' full and equal access, and deterred Plaintiffs on a regular basis from accessing the Websites. Similarly, based on the numerous access barriers contained on the Website, Plaintiffs have been deterred from visiting Defendant's physical locations and/or purchasing Defendant's products as Plaintiffs would have been able to do by using the Websites. Plaintiffs continue to attempt to utilize the Websites and plan to continue to attempt to utilize the Websites in the near future. Plaintiffs' dignitary interests as disabled persons have been harmed by Defendant's actions.

## **CAUSES OF ACTION**

## **FIRST CAUSE OF ACTION**

**Violations of the Americans With Disabilities Act, 42 U.S.C. § 12181 *et seq.***

**(Against All Defendants)**

25. Plaintiffs incorporate by this reference the allegations contained in the preceding paragraphs as if fully set forth herein.

26. Section 302(a) of Title III of the ADA, 42 U.S.C. § 12181 *et seq.*, provides: "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a).

27. Under Section 302(b)(2) of Title III of the ADA, unlawful discrimination also includes, among other things: "a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations"; and "a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden". 42 U.S.C. § 12182(b)(2)(A)(ii)-(iii). "A public accommodation shall take those steps that may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the public accommodation can demonstrate that taking those steps would fundamentally alter the nature of the goods, services, facilities, privileges, advantages, or accommodations being offered or would result in an undue burden, i.e., significant difficulty or expense." 28 C.F.R. § 36.303(a). In order to be effective, auxiliary aids and services must be provided in accessible formats, in a timely

manner, and in such a way as to protect the privacy and independence of the individual with a disability." 28 C.F.R. § 36.303(c)(1)(ii).

28. Defendant's retail winery locations are "public accommodations" within the meaning of 42 U.S.C. § 12181 *et seq.* Defendant generates millions of dollars in revenue from the sale of its products and services, privileges, advantages, and accommodations in California through its retail winery locations and related services, privileges, advantages, and accommodations and the Websites. The Websites are a service, privilege, advantage, and accommodation provided by Defendant that are inaccessible to patrons who are visually-impaired like Plaintiffs. This inaccessibility denies visually-impaired patrons full and equal enjoyment of and access to the facilities and services, privileges, advantages, and accommodations that Defendant made available to the non-disabled public. Defendant is violating the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq.*, in that Defendant denies visually-impaired customers the services, privileges, advantages, and accommodations provided by the Websites. These violations are ongoing.

29. Defendant's actions constitute intentional discrimination against Plaintiff on the basis of a disability in violation of the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq.* in that: Defendant has constructed Websites that are inaccessible to Plaintiffs; maintains the Websites in this inaccessible form; and has failed to take adequate actions to correct these barriers even after being notified of the discrimination that such barriers cause.

30. Pursuant to 42 U.S.C. § 12188 and the remedies, procedures, and rights set forth and incorporated therein, Plaintiffs request relief as set forth below.

## SECOND CAUSE OF ACTION

**Violations of the Unruh Civil Rights Act, California Civil Code § 51 *et seq*.**

**(Against All Defendants)**

31. Plaintiffs incorporate by this reference the allegations contained in the preceding paragraphs as if fully set forth herein.

32. California Civil Code § 51 *et seq.* guarantees equal access for people with disabilities to the accommodations, advantages, facilities, privileges, and services of all business establishments of any kind whatsoever. Defendant is systematically violating the Unruh Civil Rights Act, California Civil Code § 51 *et seq.*

33. Defendant's locations are "business establishments" within the meaning of the California Civil Code § 51 et seq. Defendant generates millions of dollars in revenue from the sale of its goods and services in California through its locations and related services and the Websites. The Websites are a service provided by Defendant that is inaccessible to patrons who are visually-impaired like Plaintiffs. This inaccessibility has denied visually-impaired patrons full and equal access to the facilities and services that Defendant makes available to the non-disabled public. Defendant has violated the Unruh Civil Rights Act, California Civil Code § 51 et seq., in that Defendant has denied visually-impaired customers the services provided by the Websites. These violations are ongoing.

34. Defendant's actions constitute intentional discrimination against Plaintiffs on the basis of a disability in violation of the Unruh Civil Rights Act because Defendant has constructed Websites that are inaccessible to Plaintiff, knowingly maintains the Websites in this inaccessible form, and has failed to take adequate actions to correct these barriers even after being notified of the discrimination that such barriers cause.

35. Defendant has also violated the Unruh Civil Rights Act, California Civil Code § 51 *et seq.* in that the conduct alleged herein likewise constitutes a violation of various provisions of the ADA, 42 U.S.C. § 12101 *et seq.* Section 51(f) of the California Civil Code provides that a violation of the right of any individual under the ADA shall also constitute a violation of the Unruh Civil Rights Act.

36. The actions of Defendant are in violation of the Unruh Civil Rights Act, California Civil Code § 51 *et seq.*, and, therefore, Plaintiffs are entitled to injunctive relief remedying the discrimination.

37. Plaintiffs are also entitled to a preliminary and permanent injunction

enjoining Defendant from violating the Unruh Civil Rights Act, California Civil Code § 51 *et seq.,* and requiring Defendant to take the steps necessary to make the Websites readily accessible to and usable by visually-impaired individuals.

38. Plaintiff is also entitled to statutory minimum damages pursuant to California Civil Code § 52 for each and every offense. Plaintiff is also entitled to reasonable attorneys' fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment as follows:

1. For a judgment that Defendant violated Plaintiff's rights under the ADA, 42 U.S.C. § 12181 *et seq.*, and the Unruh Civil Rights Act, California Civil Code § 51 *et seq.*;

2. A preliminary and permanent injunction pursuant to 42 U.S.C. § 12188(a)(1) and (2) and section 52.1 of the California Civil Code requiring Defendant to take the steps necessary to make the Websites, chateaustjean.com, etudewines.com, and stagsleap.com, readily accessible to and usable by visually-impaired individuals;

3. An award of statutory minimum damages of $4,000 per violation pursuant to section 52(a) of the California Civil Code;

4. For attorneys' fees and expenses pursuant to California Civil Code §§ 52(a), 52.1(h), and 42 U.S.C. § 12205;

5. For pre-judgment interest to the extent permitted by law;

6. For costs of suit; and

7. For such other and further relief as the Court deems just and proper.

Dated: November 5, 2019         PACIFIC TRIAL ATTORNEYS, APC

                                By: */s/ Scott J. Ferrell*
                                Scott. J. Ferrell
                                Attorneys for Plaintiffs

# **DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand a trial by jury of all claims and causes of action so triable in this lawsuit.

Dated: November 5, 2019             PACIFIC TRIAL ATTORNEYS, APC

                                    By: */s/ Scott J. Ferrell*
                                    Scott. J. Ferrell
                                    Attorneys for Plaintiffs